OPINION
{¶ 1} Appellant, Terry Patfield, appeals the December 9, 2004 judgment entry of the Juvenile Division of the Lake County Court of Common Pleas, in which the trial court granted permanent custody of the minor child, Elijah Patfield ("Elijah") to appellee, the Lake County Department of Job and Family Services ("LCDJFS").
 {¶ 2} Appellant is the biological father of Elijah, who was born on November 28, 2001. Holly Fleischer ("Fleischer") is Elijah's natural mother. Appellee became involved in this matter on April 4, 2002, when it received emergency temporary custody after the Painesville Police Department granted it shelter care. Appellee filed a dependency complaint on April 5, 2002. An adjudication hearing was held on June 27, 2002. At the hearing, appellant and Fleischer agreed that Elijah was a dependent child, and the trial court found him to be dependent pursuant to R.C.2151.04. On that same date, a dispositional hearing was held, and temporary custody remained with appellee. A case plan was submitted to the trial court and adopted. The plan addressed substance abuse, mental health, parenting, basic needs and necessary treatment goals. A further disposition was scheduled, but was continued because Fleischer was unable to attend as she was in a nursing home.
 {¶ 3} Appellee filed a motion for permanent custody of Elijah on March 28, 2003, pursuant to R.C. 2151.413 and R.C. 2151.415. The case was not set for a permanent custody hearing until November 7, 2003. In a judgment entry dated November 4, 2003, the trial court, on its own motion, dismissed appellee's motion for permanent custody, without prejudice, in light of the statutory time limitation provided in R.C. 2151.414. Appellee then re-filed its motion for permanent custody on November 7, 2003. A permanent custody hearing was set for January 2004. However, before the hearing, a new guardian ad litem was appointed for Fleischer through the Lake County Probate Court. The hearing was set for April 2004 and continued into August 2004.
 {¶ 4} In April 2002, when Elijah was four months old, his parents were unable to care for him due to mental health and substance abuse. Appellant asked for Elijah to be removed during a mental health intervention, and appellee has had custody of him since that time. At the hearing in April 2004, the trial court judge determined that Elijah was too young to understand the concept of permanent custody because he was only two and a half years old at the time, and he only speaks one-word sentences. The trial judge further indicated that appointing an attorney for Elijah would place that person in an impossible position.
 {¶ 5} Appellee presented the testimony of Julie Kalina-Hammond ("Hammond") of Neighboring. Hammond related that she was a supervisor of the criminal justice services. She worked with appellant and discussed his need for sub-acute care and hospitalization for his untreated hepatitis. According to Hammond, appellant was very depressed and told her he was bi-polar. Hammond recommended that appellant complete a dual diagnosis program to treat his mental health and substance abuse issues simultaneously. She further stated that to her knowledge, appellant did not follow through with the recommendation.
 {¶ 6} Several officers from the Painesville Police Department testified that they responded to domestic violence calls at the home of appellant and Fleischer from 2002 through 2004. They also related that appellant and Fleischer had problems with alcohol and that the home was deplorable. In fact, one of the officers stated that the conditions in the home amounted to a health code violation, so he reported his concerns to appellee. A visit from the police department that took place on July 28, 2002, resulted in appellant's arrest for domestic violence.
 {¶ 7} Melanie Hale ("Hale"), a supervisor with appellee, took the stand and related that appellee developed a case plan in January 2002, due to their involvement with appellant and Fleischer. In April of 2002, the case plan goals were reviewed as a result of domestic discord, drinking and the living conditions. Appellant indicated that neither he nor Fleischer could care for Elijah. The case plan goals for appellant and Fleischer were that appellant and Fleischer were to participate in a treatment program and address their mental health and substance abuse issues, attend parenting classes and continue to work with Crossroads. Both appellant and Fleischer were to ensure that Elijah's basic needs would be met if he was placed in their care and that they would obtain and maintain appropriate and stable housing.
 {¶ 8} Hale related that initially both appellant and Fleischer contacted Neighboring and did a drug and alcohol assessment. However, appellant did not provide proof of completion. In June of 2002, Fleischer called Hale and indicated that appellant would not be at a visit because he was in the hospital. In August 2002, appellant left Hale a message that he was at City Mission. Hale did not have any other contact with appellant until March 2003. Appellee learned that appellant went to live with Fleischer in April or May of 2003, after the police responded to a call at her place. Appellant later went to reside with a relative in Madison, Ohio.
 {¶ 9} Hale described appellant's visits with Elijah as sporadic. Of the few visits appellant made, he was very engaging and affectionate with Elijah according to Hale. Appellant played with him and paid attention to him. Appellant would "be vocal and would encourage Elijah to listen to him and hear his voice and respond appropriately."
 {¶ 10} Melissa Flick ("Flick"), a substitute care supervisor for appellee, related that Elijah was a special needs child. Flick indicated that Elijah was exposed to some alcohol use by his mother, Fleischer, during her pregnancy. She also stated that Elijah was developmentally delayed, had eating issues, and his speech was severely delayed. Flick opined that Elijah needed some sort of permanency in his life. Since Elijah had been out of the home since he was four months old, his attachment to his parents had been disrupted because he had spent more time in foster care.
 {¶ 11} According to Flick, appellant and Fleischer did not fully take advantage of the visitation offered to them as they frequently canceled visits with Elijah. Fleischer asked to have visits moved to Friday afternoon instead of morning because she is an insomniac, and appellee refused. Flick explained that "if the child were to be placed into the home for full time, that the parents' responsibility would be that they would need to be available to parent that child during the morning, during the afternoon, during the evening, all night long. So we felt, as an agency, that [Fleischer] would need to show that she would be able to make those morning visits, that she would be capable of caring for the child during that time period."
 {¶ 12} Samantha Afanador ("Afanador"), an adult case manager with Pathways, revealed that she worked directly with appellant and provided him with symptom monitoring, advocating in the community and home-based community support. Afanador stated that appellant was not compliant with his medication and that he was unable to cope with the stress of having a child and being in a relationship. Appellant also threatened suicide. Appellant needed a crisis team and was recommended for dual diagnosis treatment at Neighboring, but he did not follow through. He was hospitalized and did not complete his treatment. In fact, according to Afanador, any progress appellant made was not consistent.
 {¶ 13} Renee Markeiwicz ("Markeiwicz"), an occupational therapist testified that Elijah showed a delay in fine motor, language and feedings issues. She indicated that she had been working with Elijah for two years and that he had made a lot of progress in his fine motor skills during that time. Markeiwicz explained that Elijah is functioning more in the twelve to eighteen month level in a lot of his fine motor and cognitive skills and feedings issues even though he was almost three years of age. In her opinion, Elijah "needs someone there all the time, * * * you need to keep a close eye on him. He does a lot of inappropriate play." A couple other people also testified and stated that Elijah needed consistency in his life.
 {¶ 14} Appellant admitted his lack of compliance with the case plan. He also acknowledged that he did not visit with Elijah from September 17, 2002, until October 1, 2003.
 {¶ 15} After twelve days of hearings, the trial court granted permanent custody of Elijah to appellee in a judgment entry dated December 9, 2004. It is from that entry that appellant timely filed the instant appeal and presents the following assignment of error for our review:
 {¶ 16} "The trial court erred in granting the motion for permanent custody as the court's findings are not supported by clear and convincing evidence."
 {¶ 17} Under appellant's lone assignment of error, he claims that the trial court erred in granting permanent custody of Elijah to appellee.
 {¶ 18} Permanent custody should be granted to a petitioning agency only where the court finds, by clear and convincing evidence, that the grant of permanent custody is in the best interests of the child; and any of the following apply: (1) the child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies, or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents; (2) the child is abandoned; (3) the child is orphaned, and there are no relatives of the child who are able to take permanent custody; or (4) the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999. R.C. 2151.414(B)(1)(a) through (d) and In re Smith, 11th Dist. No. 2002-A-0098, 2003-Ohio-800, at ¶ 8. See, also, In re Simkins, 11th Dist. No. 2002-T-0173, 2003-Ohio-1884, at ¶ 15.
 {¶ 19} In the instant matter, even though the minor may have been in the temporary custody of appellee for more than twelve of a consecutive twenty-two month period, that is not the only factor in determining whether to grant permanent custody. The best interest of the child must also be considered.
 {¶ 20} If the juvenile court decides that one of the four circumstances in R.C. 2151.414(B)(1)(a) through (d) is present, then the court continues with an analysis of the child's best interest. In determining the best interest of the child at a permanent custody hearing, R.C. 2151.414(D) requires that the trial court consider all relevant factors, including but not limited to: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the child's wishes as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the child's custodial history; (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; and (5) whether any factor in R.C. 2151.414(E)(7) to (11) is applicable. Smith, supra, at ¶ 10. See, also, In re Litz (Nov. 9, 2001), 11th Dist. No. 2001-G-2367, 2001 WL 1402653, at 4.
 {¶ 21} The trial court may terminate the rights of a natural parent and grant custody of the child to the moving party only if it finds by clear and convincing evidence that one of the four factors in R.C.2151.414(B)(1)(a) applies and that it is not in the best interest of the child to be placed with the natural parent. Clear and convincing evidence is more than a mere preponderance of evidence; instead, it is evidence sufficient to produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established. In re Adoption ofHolcomb (1985), 18 Ohio St.3d 361, 368; Cross v. Ledford (1954),161 Ohio St. 469, paragraph three of the syllabus.
 {¶ 22} It is axiomatic that both the best interest determination and the decision that the child cannot be placed with either parent focus on the child, not the parent. Miller v. Miller (1988), 37 Ohio St.3d 71, 75. A trial court cannot consider the effect that granting permanent custody will have on the parent of the child. R.C. 2151.414(C). In reviewing a trial court's determination, an appellate court may not reverse the decision unless there is a showing of an abuse of discretion. Miller at 74. An abuse of discretion connotes more than an error of law or judgment, it implies that the court's attitude was unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219. An appellate court must consider that "`[t]he knowledge a trial court gains through observing the witnesses and the parties in a custody proceeding cannot be conveyed to a reviewing court by a printed record.'" Reynolds v. Goll (1996), 75 Ohio St.3d 121, 124. Thus, the lower court is in the best position to weight the evidence and assess the credibility of the witnesses. Holcomb, 18 Ohio St.3d at 367.
 {¶ 23} In addition to Elijah being in the temporary custody of appellee for more than twelve of a consecutive twenty-two month period, the evidence showed that appellant had not made enough progress with his case plan to justify that a reunification could be a realistic possibility. The testimony of appellee's witnesses established that Elijah had special needs and required a stable environment with constant attention.
 {¶ 24} Additionally, based on the record before us, appellee made efforts to assist appellant and Fleischer in correcting the problems that cause Elijah's removal from the home. Despite these efforts, appellant did not address his emotional and alcohol problems. It is our position that appellant did not make strides toward becoming a better parent.
 {¶ 25} Furthermore, appellant has failed to show that giving permanent custody to appellee would not be in the best interest of Elijah. As previously mentioned, appellant has not substantially complied with his case plan and does not appear to be in a position to provide for his child's basic and medical needs. It is our position that there was sufficient evidence presented to support the trial court's decision to grant appellee's motion for permanent custody. Hence, it is our view that the trial court did not abuse its discretion. It is also our position that it was in the best interest of Elijah for the trial court to grant the permanent custody motion of appellee.
 {¶ 26} For the foregoing reasons, appellant's sole assignment of error is not well-taken. The judgment of the Lake County Court of Common Pleas, Juvenile Division, is affirmed.
O'Neill, J., Rice, J., concur.